IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CR3111 |
| | ) | |
| vs. | ) | **ORDER ON INITIAL REVIEW** |
| | ) | |
| LEOPOLDO ROMO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for initial review of defendant Romo's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (filing 46). The defendant entered a plea of guilty to two counts[1] of a five-count second superseding indictment (filing 14) charging, among other things, distribution and possession with intent to distribute methamphetamine and criminal forfeiture. (Filing 24, Petition to Enter a Plea of Guilty; Filing 25, Plea Agreement; Filing 33, Transcript of Change of Plea Proceedings.) As reflected in the Judgment in a Criminal Case filed on May 2, 2005, (filing 42) the court sentenced the defendant to 70 months of imprisonment, to be followed by four years of supervised release. The defendant did not file a direct appeal.

Romo's § 2255 motion raises one issue—ineffective assistance of counsel. Specifically, the defendant alleges that his attorney incorrectly advised him that he must "actively assist the Government in the investigation and prosecution of [his] accomplices" in order to qualify for the so-called "safety valve," which allows the court to decrease a defendant's offense level by two levels if the defendant meets certain criteria.[2] 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(7) & 5C1.2(a) (2004).

---

[1]The remaining three counts were dismissed upon the motion of the United States. (Filing 42, at 1.)

[2]Specifically, the defendant must not have more than one criminal history point under the Sentencing Guidelines; the defendant must not have used violence or

Romo asserts that because he "was not prepared to actively assist the Government in the investigation and prosecution of others involved in the case and other drug-trafficking activities, as that would jeopardize the security of [his] family," he did not pursue the safety-valve possibility. He claims that "[a]t the time of the conversation about the Safety Valve with [counsel], I told him that I would be willing to be debriefed by the Government about my involvement in the case and the identity and role played by others known to me to have participated in the criminal conduct." (Filing 48, Decl. of Leopoldo Romo.)

The court file and computerized recording of the sentencing proceedings establish that the defendant's counsel filed an objection (filing 34) to the Revised Presentence Investigation Report stating that the defendant "will attempt to qualify for the safety valve. He is in the process of scheduling a safety valve interview prior to his sentencing date." Counsel's objection correctly noted that "[i]n the event that Mr. Romo qualifies for the safety valve, his total offense level would be 25, criminal history category I, resulting in a guideline imprisonment range of 57 to 71 months." Application of the safety valve in Romo's case would have resulted in a shorter sentence than the one actually imposed, which was based on the higher total offense level of 27, criminal history category I, and an imprisonment range of 70-87 months. At the sentencing hearing, Defendant's counsel withdrew his objection regarding the safety valve, stating that although the defendant appeared to be otherwise eligible for the safety valve, the defendant told counsel he "did not wish to give a statement" to the government.

---

credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; the offense must not have resulted in death or serious bodily injury; the defendant must not have been an organizer, leader, manager, or supervisor of others in the offense; and the defendant must have truthfully provided to the government before sentencing "all information and evidence the defendant has concerning the offense . . . that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a) (2004).

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

As noted above, the defendant in this case did not file a direct appeal, and has raised his ineffective-assistance-of-counsel claim for the first time on collateral review.

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. See Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error. United States v. Frady, 456 U.S. 152, 167-68 (1982); Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995). Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice. To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden[.]

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (parallel citations omitted).

The Sixth Amendment to the United States Constitution guarantees that an accused shall have "the assistance of counsel for his defence." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 535 U.S. 162, 166 (2002), citing Strickland v. Washington, 466 U.S. 668, 685-86 (1984). See also Bell v. Cone, 535 U.S. 685, 695 (2002) (parallel citations omitted):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," [Strickland,] 466 U.S., at 688; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id., at 694.

> Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," id., at 687, and the sentence or conviction should stand.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

Id. at 690.

At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. Strickland requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." Id.

In addition to demonstrating that counsel's performance was deficient, "i.e., that 'the identified acts or omissions were outside the wide range of professionally competent assistance' despite the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" the defendant must establish prejudice—that is, "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

4

different.'"  Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694).

The information now before the court suggests that the defendant suffered prejudice in the form of an increased sentence by not pursuing and qualifying for the "safety valve."[3]  Whether Romo's counsel misrepresented what was required to qualify for the safety valve—that is, "actively assisting" the Government in investigating and prosecuting others involved in the case and other drug-trafficking activities, as compared to simply "providing" information and evidence to the Government which Romo claims he told counsel he was willing to do—and whether this alleged misrepresentation can be considered ineffective assistance within the meaning of the Sixth Amendment is a matter on which the parties should be heard.

---

[3]Some may argue that prejudice cannot be established because Romo may not have received a lesser sentence had he qualified for the safety valve because the Sentencing Guidelines are only advisory.  While it is true that the Sentencing Guidelines are no longer mandatory, United States v. Booker, 125 S. Ct. 738, 757, 764-65 (2005), the Federal Sentencing Act nevertheless "requires a sentencing court to consider Guidelines ranges," along with "other sentencing goals," such as reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and providing defendants with appropriate educational and vocational training and medical care.  The Act requires judges to consider Guideline sentencing ranges for various categories of offenses committed by various categories of defendants, the Sentencing Commission's policy statements, the need to avoid unwarranted disparities in sentencing, and the need to provide restitution to victims.  Id.  In Romo's case, I advised the parties in my Tentative Findings (filing 35) that I would "give the advisory Guidelines substantial weight" and would "deviate or vary from the Guidelines only when there is a plainly superior, principled reason which justifies a sentence different than that called for by application of the advisory Guidelines."  This is enough to establish a "reasonable probability" that, but for counsel's alleged unprofessional error, and pursuant to the terms of the Sentencing Guidelines, Romo would have received a lighter sentence had he qualified for the safety valve.

5

Therefore, I will order the United States to answer the defendant's § 2255 claim alleging ineffective assistance of counsel.

IT IS ORDERED:

1. The court has completed initial review of the defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (filing 46);

2. Summary dismissal of the defendant's § 2255 claim asserting ineffective assistance of counsel is not required;

3. By February 17, 2006, the United States shall file an answer to the defendant's § 2255 claim, supported by a brief; and

4. By March 20, 2006, the defendant may file a reply brief.

January 18, 2006.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge